[No. 12674.   Department One. — June 9, 1890.]

## IN RE L. L. BREGARD,. AN INSOLVENT DEBTOR.

INSOLVENCY — ERRORS IN SCHEDULE OF PROPERTY AND DEBTS — RIGHT OF INSOLVENT TO DISCHARGE. — An insolvent who has acted in good faith, and upon the advice of counsel, in including certain property and a list of debts in his schedule, which are objected to by a creditor, who opposes his discharge, on the ground that the insolvent was not the owner of such property, and that such debts are false and fictitious, is entitled to his discharge, even though the schedule was in fact erroneous.

ID. — WHAT SCHEDULE OF INSOLVENT SHOULD· CONTAIN — PARTNERSHIP ASSETS AND LIABILITIES — "FALSE AND FICTITIOUS" DEBTS. — It is the duty of an insolvent debtor to include in his schedule all the property in which he is interested, including his interest in partnership assets, and all the debts for which he is personally liable, including his debts as a partner, and even if his copartner has attempted to pay the partnership debts by a transfer of partnership assets without the knowledge of the insolvent, such debts included in the list are not "false and fictitious debts," within the meaning of section 48 of the insolvent act.

FARMING PARTNERSHIP — MORTGAGE OF CROP BY ONE JOINT OWNER. — One joint owner of a crop raised by a farming partnership·cannot mortgage the other joint owner's interest in the crop.

ID. — RIGHTS OF JOINT OWNERS OF CROP. — Until such crop is harvested and sold, one joint owner has as much interest in the crop as the other, and has the right to insist upon its being sold to the best possible advantage.

APPEAL from a judgment of the Superior Court of Contra Costa County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*R. H. Latimer,* for Appellant.

*Eli R. Chase,* for Respondent.

PATERSON, J. — The petitioner was duly adjudged an insolvent debtor on October 16, 1886, and following the adjudication the usual statutory orders were made and entered. In May following, D. McKenzie, one of the creditors, and respondent herein, filed an opposition to the petitioner's application for a discharge, in which he alleged that the petitioner had failed to include in his schedules several head of horses and of cattle, a double wagon, and a pre-emption claim to 160 acres of land, all of said property being valued at about $5,500; that he had included in his schedule three false and fictitious debts, viz., $66.60, $1,040, and $135.39, in which amount he claimed to be indebted to one Shuey; that he had included in his schedule of assets a certain amount of hay, and a three-eighths interest in certain barley and wheat, which did not belong to him.

After a trial of the issues the court found that the petitioner was not the owner of the horses, cattle, lumber, or pre-emption claim referred to in the opposition, but that he had included in his schedule the false and fictitious debts above referred to. The court further found that at the time of filing his petition he was not the owner of the hay, or of the three-eighths interest in the barley and wheat. Upon these findings the court concluded that the petitioner was not entitled to a discharge, and an order was entered denying his application.

We cannot understand how the learned judge of the court below could have arrived at this conclusion upon the evidence. McKenzie rented a ranch in Contra Costa County for the cropping season 1885–86, and entered into an agreement with the petitioner, by the terms of

which they were to farm the ranch together, each one furnishing one half of everything needed, to perform half of the labor, and, after the rent was paid, the same being one fourth of the crop, the profits to be equally divided between them. McKenzie testified: "I furnished the farming utensils, except one plow. Bregard was in partnership with me. Each one was to furnish one half of everything, — teams, farming implements, seeds, and labor, — and we were to divide the profits. I was responsible for all the debts. There was no other contract between us except this one. I was to pay the debts out of the crop, and we were to divide the balance." Bregard, in his testimony, denied that McKenzie was to be responsible for his share of the debts. This is the only particular in which the evidence is at all conflicting. They bought goods of Shuey on their joint account to the amount of $1,175.39, — being the amounts given in the schedule, $1,040 and $135.39, — and Bregard became indebted to Shuey on an individual account in the sum of $66.60. McKenzie gave Shuey a note secured by a chattel mortgage on the crop for this indebtedness and his individual indebtedness to Shuey. The goods purchased from Shuey were charged by him to the joint account of McKenzie and Bregard. Bregard had no knowledge of the fact that McKenzie had made the note and mortgage until after it had been delivered to Shuey. After the crop was harvested and sacked, McKenzie delivered the whole of it to Shuey in satisfaction of the indebtedness of the partnership and the individual indebtedness of himself and Bregard. When Shuey attempted to take possession of the property and remove it from the premises, Bregard met him with a shotgun and refused to let him enter the premises, claiming that McKenzie had no right to mortgage his interest in the grain, or to dispose of it in that way. Shuey then had the petitioner arrested, and thereafter went and removed the grain in the night-time, and kept the same in satis-

faction of the debts due him from the petitioner and McKenzie. At the trial Shuey testified that he did not *consider* that the petitioner owed him anything. He did not, however, testify that he never had owed him anything on the account. The account itself shows that Shuey considered both McKenzie and Bregard liable on the joint account.

Whether we accept the statement of McKenzie that he was to pay all the debts out of the proceeds of the crop, or the statement of the petitioner that there was no understanding to the effect that McKenzie should be responsible to Shuey for all goods bought on their joint account, the fact remains that McKenzie had no authority to mortgage petitioner's interest in the crop. Until the crop was harvested and sold, the petitioner had as much interest therein as McKenzie, and he had the right to insist upon the crop being sold to the best possible advantage. He had the further right,—indeed, it was his duty,—upon petitioning to be adjudged an insolvent debtor, to have all the property in which he was interested put in his schedule and divided among all his creditors. There is nothing in the record to indicate that he acted in bad faith, or with any fraudulent purpose, in putting the debts above referred to in his schedule. They were not "false or fictitious debts," within the meaning of section 48 of the insolvent act. There is nothing to show even that he knew McKenzie had attempted to pay the debts of the partnership, and certainly nothing to show that he knew he had attempted to pay his, the petitioner's, individual debts by a transfer of the grain. The petitioner knew that he was responsible to Shuey, not only for his own individual debts, but for the entire partnership debt, and the evidence shows, we think, clearly that he believed he was entitled to hold his three-eighths interest in the property, and have it devoted to part payment of paying the claims of all of his creditors. Doubtless, McKenzie

believed that he had the right to control and mortgage the entire crop, and acted in good faith in endeavoring to pay the debts of himself and the petitioner by transferring the property to Shuey. It is equally clear that the petitioner acted in good faith in trying to have his property divided among all of his creditors. He stated that he acted on the advice of his attorney in putting the description of the property and the list of debts in his schedules. There certainly is nothing to show — indeed, there is no claim made — that the petitioner was trying in any way to defraud his creditors, even Shuey. Even if the petitioner was not the owner of the three-eighths interest in the crop, no one was injured by the fact that it was described in his schedule as a portion of his estate.

Unless we can say that the insolvent debtor must, at his peril, interpret accurately his relations with third persons, and to all property claimed by him, and can be held responsible for all errors in relation thereto, though acting in good faith and upon the advice of competent counsel, the petitioner herein is entitled to his discharge.

We think, upon the undisputed evidence in the case, that the petitioner is entitled to a discharge.

Judgment reversed, with directions to the court below to enter an order as prayed for in the application for a discharge.

Fox, J., and Beatty, C. J., concurred.